PER CURIAM:
Claimant brought this action for vehicle damage and for personal injuries which resulted when a tree fell on Route 52 in Mingo County. The Court is of the opinion to deny this claim for the reasons set forth below.
The incident giving rise to this claim occurred during a period of good weather at approximately T.00 p.m. on February 11, 2003. Route 52 is a road maintained by respondent. The speed limit on this road is fifty-five miles per hour. On the day in question, as claimant was traveling north from Varney to Fort Gay on Route 52 in his1999 Ford Explorer at or near the speed limit, the crown of a tree fell from a rock-cut high wall adjacent to the roadway. Claimant stated that he did not notice that the crown of the tree was falling until immediately before the impact with his vehicle. Thus, he did not have an opportunity to accelerate or stop his vehicle to avoid the tree.
Andrew Harmon, the only passenger in the vehicle, testified that claimant swerved his vehicle into the left lane of traffic to avoid hitting the tree. Despite claimant’s attempt to avoid the tree, a limb struck the driver’s side of the vehicle. Mr. Harmon stated that he became unconscious, but he recalled that volunteer firemen came to their assistance shortly after the incident.
As a result, claimant’s vehicle was totaled, and he sustained medical bills in excess of $200,000.00. Claimant asserts that respondent knew or should have known that the tree was rotten and that by allowing it to stand over or near the highway, the tree presented a hazardous condition to the traveling public. The tree was located approximately six feet off respondent’s forty-foot right-of-way. Claimant contends that even though the tree is not within respondent’s forty foot right-of-way, it is situated on a roclc-cut high wall that is maintained and controlled by respondent. Thus, claimant alleges that respondent is liable for the damage caused by this tree.
During the hearing, claimant presented the expert testimony of consulting forester Daniel Parker. Mr. Parker has extensive experience in identifying potential danger trees. He explained that the tree in question is a white oak tree that continues to live, sans its crown, on the top of the edge of a high wall on Route 52. The tree is a medium sized, saw timber tree that is approximately sixteen inches in diameter. Mr. Parker explained that a white oak tree can have a life span of five hundred years, and the tree in question appears to be fifty to eighty years old. Claimant stated that generally, white oak trees are very resilient and not subject to rot compared to other trees.
Mr. Parker explained that it would have been possible to identify this tree as a danger tree prior to this incident because of the tree’s juxtaposition to the road. In this case, there are two large white oak trees, including the one that fell, that are standing next *79 to each other on the top of this particular cliff. Mr. Parker stated that both of these trees pose an imminent threat of falling on the road. In his report, Mr. Parker explained that any reasonable person would assume that it and all trees in similar circumstances have the potential to fall on the highway. He stated that trees located in such an area would be reaching for sunlight over the top of the road.
In addition, Mr. Parker stated that the tree in question was rotten at a point high on its trunk. Mr. Parker, as an expert, immediately recognized that the tree was rotten from the highway. After climbing up the cliff to view the tree, he stated that a reasonable person standing at the base of the tree would recognize that the tree was rotten to the core. However, he stated that the tree may have appeared more alive in 2003 than it did when he conducted his investigation which was four years after the incident.
Mr. Parker testified that a tree can be rotten and still be alive. In this case, he stated that the base of the tree could have been damaged by a wild fire. He observed that a limb that hangs over the highway still has green leaves on it. Despite the fact that this limb is alive, Mr. Parker believes that the roots of the tree are dying. Therefore, Mr. Parker stated that it is likely that the tree will eventually fall again.
Since the crown of this particular tree fell in the middle of the day and weather was not a factor, Mr. Parker believes that there must have been a significant amount of rot on the inside of the tree. Mr. Parker stated that it is unlikely that installation of the rock wall caused this tree to fall. He stated that this particular tree either did not exist when the high wall was created during construction on the road or was a very small tree at the time. The rot was most likely caused by an injury that occurred twenty feet up the main trunk of the tree. Mr. Parker believes that the rot could have been caused by lightening, or it could have been the result of construction damage resulting from the installation or maintenance of the utility line located behind the tree. This damage could have occurred decades prior to the incident herein. Mr. Parker explained that prior to the time of the incident, loose bark would probably have been visible from the road. However, the damage to the base of the tree and the damage to the trunk would not have been in plain view from the highway.
The position of the respondent is that it did not have actual or constructive notice that the tree that struck claimant’s vehicle posed a risk to the traveling public prior to the time of claimant’s incident. Respondent states that the remaining portion of the tree that fell still had green leaves and appeared to be a live tree. In addition, respondent avers that the tree is located off of its right-of-way. Respondent states that it cannot be found liable for every tree along the road side that has the potential of creating a hazard to the traveling public.
Joshua Albert Hunt, the firefighter for the Kermit Volunteer Fire Department that responded to the incident in question, observed that the top portion of the tree was lying through the windshield of a F ord Explorer. He testified that the vehicle was located against the guardrail on the road. Since the tree was situated on the hood of the vehicle, it did not occupy the entire width of the road. The bottom portion of the tree remained standing on the hill. Mr. Hunt explained that he stabilized the patient inside the vehicle, and then removed the tree from the road. As he cut the crown of the tree in order to remove it, he noticed that the crown had hard wood that was not rotted.
Larry Michael Vasarhelyi, Chief Investigator for respondent’s Legal Division, testified that he visited the site of this incident on September 27, 2007. Mr. Vasarhelyi described Route 52 as a two-lane priority road. Respondent submitted as evidence photographs indicating the location of the incident on Route 52. Mr. Vasarhelyi stated *80 that the photographs indicate that the remaining portion of the tree is located in the center of two jagged rock edges, and there is green foliage growing from the tree in question. Norman Stepp, County Supervisor for respondent in Mingo County, testified that he is familiar with the stretch of Route 52 between East Kermit and Naugatuck where the claimant’s accident occurred. Prior to this incident, he stated that the respondent did not receive any complaints regarding tree falls in this particular location. Although he does not recall removing any trees in the area where this incident occurred, he stated that respondent has continuously removed trees over the years along Route 52. In the twenty years that he has worked for respondent, Mr. Stepp stated that he has removed or has directed other employees to remove at least four hundred to five hundred trees. If the tree is located off respondent’s right of way, Mr. Stepp stated that respondent’s general policy is that its crews may not cut a tree without the property owner’s authorization.
It is a well established principle of law that the State is neither an insurer nor a guarantor of the safety of motorists on its roads and highways. Adkins v. Sims, 46 S.E.2d 81 (W.Va.1947). To hold respondent liable, claimant must establish by a preponderance of the evidence that respondent had actual or constructive notice of the road defect in question and a reasonable amount of time to take corrective action. Chapman v. Dept. of Highways, 16 Ct. Cl. 103 (1986); Pritt v. Dept. of Highways, 16 Ct. Cl. 8 (1985).
In cases involving falling trees or tree limbs, the Court has held that respondent is liable for dangerous trees or tree limbs on its property or rights-of-way. Wiles v. Division of Highways, 22 Ct. Cl.170 (1999). The general rule is that if a tree is dead and poses an apparent risk then the respondent may be held liable. However, where a healthy tree or tree limb falls as a result of a storm and causes damage, the Court has held that there is insufficient evidence upon which to justify an award. Gerritsen v. Dept. of Highways, 16 Ct. Cl. 85 (1986).
In the instant case, the Court is of the opinion that respondent did not have actual or constructive notice of the fallen tree on Route 52 on the day in question. Based on the evidence presented by Joshua Hunt, who observed the tree on the day of the incident, the tree’s crown consisted of hard wood and appeared alive. In addition, the tree was off respondent’s right-of-way, and the cut that respondent made in the high-wall was not the cause of the tree fall. The evidence also indicates that the portion of the tree that appeared rotten could not have been seen from the highway unless specifically brought to the attention of the respondent. Prior to this incident, respondent did not have any complaints regarding tree falls in this particular location. The Court will not place a burden on respondent with respect to trees surrounding its highways unless the tree poses an obvious hazard to the traveling public. While the Court is sympathetic to claimant’s loss, the Court has determined that there is insufficient evidence of negligence upon which to base an award.
In view of the foregoing, the Court is of the opinion to and does deny this claim.
Claim disallowed.